# STATE OF MICHIGAN

# COURT OF APPEALS

RACHEL HOFFENBLUM, ROBYN
HOFFENBLUM and JARED HOFFENBLUM,

        Plaintiffs-Appellants-Cross-
        Appellees,

FOR PUBLICATION
November 18, 2014
9:00 a.m.

v

No. 317027
Oakland Circuit Court
LC No. 2012-009723-AV

HARVEY HOFFENBLUM,

        Defendant-Appellee-Cross-
        Appellant.

Before: FITZGERALD, P.J., and WILDER and OWENS, JJ.

WILDER, J.

Plaintiffs Rachel Hoffenblum, Robyn Hoffenblum and Jared Hoffenblum appeal by leave granted, and defendant cross-appeals, the circuit court order that affirmed the judgment of the district court of no cause of action in this case alleging conversion. We affirm in part and reverse in part.

I.

This case arises out of plaintiffs' assertion that defendant, their father, wrongfully exerted dominion over the money in their trust accounts. At trial the parties stipulated that when plaintiffs were minors, financial accounts were established on their behalf at some point before October 2004 pursuant to the Michigan Uniform Transfer to Minors Act, MCL 554.521 *et seq*, that defendant was the custodian of the accounts, and that in October and November 2004, defendant was financially unstable, and removed a total of $18,305.43 from the children's accounts.[1]

Plaintiffs' mother, Sheila Waldman, testified that she and defendant divorced on September 3, 1997, after a "bitter" proceeding. Defendant claimed that, after the divorce, Waldman attempted to poison plaintiffs against him.

---

[1] Statements showing plaintiffs' empty UTMA accounts are in the certified record.

-1-

According to the parties' pleadings, under the judgment of divorce, defendant was required to pay 52% of any of plaintiffs' unreimbursed medical expenses. Defendant testified that he maintained health insurance for plaintiffs. But, according to defendant, Waldman unilaterally sent plaintiffs to out-of-network providers, resulting in over $20,000 in medical bills from 1997 to 2004, which defendant's insurance company refused to pay.

The certified record includes many requests for health care expense payments by Waldman to defendant through the friend of the court from about 1999 to 2001. Defendant testified that the court ordered him to pay these medical bills, with the exception of expenses for out-of-network providers. An October 18, 2001 order admitted at trial provided that Waldman, alone, would pay for out-of-network medical expenses and defendant would pay for network expenses. A September 19, 2006 order also provided, "The parties shall not use out-of-network providers."

Defendant testified that, when he discussed his tenuous financial situation with his financial advisor (Harvey Markzon), Markzon suggested he utilize plaintiffs' UTMA accounts. As a result, defendant testified that, in the fall of 2004, he withdrew money and reimbursed himself for medical expenses that he had previously paid. He did not remember when he had paid the medical expenses, but testified that he used the money withdrawn from the UTMA accounts to pay an attorney to seek parenting time.

In August 2005, Rachel attempted to withdraw money from her UTMA account for books for college and learned the account was empty. Waldman testified that she subsequently instructed her attorney to demand the money be returned to plaintiffs' UTMA accounts. According to Waldman, her attorney wrote a letter, but defendant did not return the money. Defendant testified that no one ever asked him to return the money.

Following the bench trial, the district court addressed four issues it found applicable to conversion: (1) plaintiffs had an enforceable right to the money, (2) defendant did not wrongly convert the money—

> I don't care legally whether Mr. Hoffenblum paid a fee and then reimbursed or whether he paid a doctor specifically . . . I don't care whether [defendant] was ordered by a Judge to pay for his children's care or whether he was morally required to pay for their care as a parent . . . I do believe that $20,000 for psychological care . . . was absolutely necessary . . . And I don't question whether or not they needed to go to the psychiatrist. However, I do believe that that . . . would be an extraordinary expense covered by UTMA.

(3) plaintiffs failed to ask for the money back prior to filing a claim—

> The third [requirement for conversion] is did the plaintiffs ever ask for it back. Plaintiffs' counsel described that as a silly requirement. I would more – I would describe it as a technical requirement, but a requirement nonetheless. A conversion is a very strong allegation to make and you can't say we asked for it back once we filed. So I do believe that the plaintiffs failed to ask for the money back prior to filing the claim.

and (4) defendant consulted his financial advisor before taking the money, who opined that all the withdrawals were appropriate, so plaintiffs failed to prove that defendant knew what he was doing was wrong. The district court entered a judgment of no cause of action based on the determination that plaintiffs had failed to prove the elements of their conversion claim.

Plaintiffs appealed to the circuit court, which reversed the district court's finding that defendant did not wrongly convert the money, ruling that the amount withdrawn from the UTMA accounts did not benefit plaintiffs because they had already received the benefit of the medical services. The circuit court also reversed the district court's ruling that scienter was required and remanded for reconsideration of the district court's finding that plaintiffs never asked for the money to be returned in light of Waldman's testimony.

The district court held a remand hearing and found:

The failure to produce the actual letter sent by Ms. Waldman's own attorney or a letter rejecting the request weighs heavily on this Court's decision. The Plaintiff failed to call her previous attorney. The Plaintiff has the burden of proof to prove at trial that the request was made . . . I found then and I find now, that Ms. Waldman's testimony did not satisfy her burden that the letter was actually sent. Plaintiff did not confirm receipt of the letter.

The district court inquired of the parties whether a ruling on the question of treble damages was desired, and plaintiffs requested the district court's ruling, so that both issues would be eligible for appeal. The district court then ruled:

I do find and I will note that the Plaintiff did not brief this issue in his brief to this Court. What I asked is whether 600.2915 [sic] requires treble damages or if it is discretionary. Treble damages in my opinion, is used to penalize a party. I find that the Defendant was acting on advice from his financial planner, and that he did not act with malice. Therefore, I would not issue treble damages.

The district court entered the followed order on remand:

IT IS HEREBY ORDERED that the original finding of this Court to the effect that the plaintiffs did not reasonably request for the funds to be returned is reaffirmed.

IT IS FURTHER ORDERED that treble damages are not appropriate.

Plaintiffs appealed again to the circuit court, arguing that the district court exceeded the scope of the circuit court's remand by considering: (1) whether Waldman "reasonably" demanded the money be returned, and (2) treble damages. The circuit court concluded that the district court acted within the scope of its authority and affirmed the order entered by the district court on remand.

This Court granted plaintiffs' application for leave to appeal, and ordered the parties to also address whether the district court erred as a matter of law by ruling that a demand was

required under the circumstances of this case. *Hoffenblum v Hoffenblum*, unpublished order of the Court of Appeals, issued February 19, 2014 (Docket No. 317027).

II

Defendant argues that the circuit court erred by ruling on appeal that he wrongfully exerted dominion over plaintiffs' money in the UTMA accounts, and by reversing the district court's finding that defendant properly withdrew the money to reimburse himself for medical expenses. We disagree.

To the extent this case involves the interpretation and application of a statute, specifically the delivery, payment, or expenditure by a custodian in MCL 554.539, our review is de novo. *Aroma Wines and Equip, Inc v Columbia Distribution Servs, Inc*, 303 Mich App 441, 451; 844 NW2d 727 (2013). The primary goal when interpreting a statute is to ascertain and give effect to the Legislature's intent. *Mich Ed Ass'n v Secretary of State* (*On Rehearing*), 489 Mich 194, 217-218; 801 NW2d 35 (2011). "The words contained in a statute provide us with the most reliable evidence of the Legislature's intent." *Green v Ziegelman*, 282 Mich App 292, 301; 767 NW2d 660 (2009). "[S]tatutory provisions are not to be read in isolation; rather, context matters, and thus statutory provisions are to be read as a whole." *Robinson v City of Lansing*, 486 Mich 1, 15; 782 NW2d 171 (2010). If statutory language is unambiguous, the Legislature is presumed to have intended the plain meaning of the statute. *Fleet Business Credit, LLC v Krapohl Ford Lincoln Mercury Co*, 274 Mich App 584, 591; 735 NW2d 644 (2007). An unambiguous statute must be enforced as written. *Fluor Enterprises, Inc v Dep't of Treasury*, 477 Mich 170, 174; 730 NW2d 722 (2007).

"Conversion, both at common law and under the statute, is defined as 'any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein.' " *Aroma*, 303 Mich App at 446-447, quoting *Lawsuit Fin, LLC v Curry*, 261 Mich App 579, 591; 683 NW2d 233 (2004). The act is wrongful when it is inconsistent with the ownership rights of another. *Check Reporting Servs, Inc v Mich Nat'l Bank–Lansing*, 191 Mich App 614, 626; 478 NW2d 893 (1991).

Gifts made pursuant to the UTMA are irrevocable and property placed in a UTMA account is "indefeasibly vested in the minor." *People v Couzens*, 480 Mich 240, 248; 747 NW2d 849 (2008), quoting MCL 554.536(2). MCL 554.539 provides:

> (1) A custodian may deliver or pay to the minor or expend for the minor's benefit so much of the custodial property as the custodian considers advisable for the use and benefit of the minor without court order, without regard to the duty or ability of the custodian personally or of any other person to support the minor, and without regard to other income or property of the minor that may be applicable or available for that purpose.

> (2) On petition of an interested person or the minor if the minor is at least 14 years of age, the court may order the custodian to deliver or pay to the minor or expend for the minor's benefit so much of the custodial property as the court considers advisable for the use and benefit of the minor.

(3) A delivery, payment, or expenditure under this section is in addition to, is not in substitution for, and does not affect an obligation of a person to support the minor.

"[A] parent's duty to support a minor child requires the parent to furnish all necessaries essential to the health and comfort of the child, including, for example, medical care." *Manley v Detroit Auto Inter-Ins Exchange*, 127 Mich App 444, 453; 339 NW2d 205 (1983).

Defendant claims that any obligation of defendant or Waldman to pay for the out-of-network medical expenses was irrelevant to the expenditure of custodial property for those expenses. But the plain language of MCL 554.539(3) requires the expenditures of custodial property to be "in addition to" and "not in substitution for . . . an obligation of a person to support the minor." In *Wayne Co Prosecutor v Recorder's Court Judge*, 406 Mich 374; 280 NW2d 793 (1979), our Supreme Court explained that when the Legislature defined the offense of felony-firearm as a "felony" and required its two-year sentence to be served "in addition to" the sentence for the underlying felony, it demonstrated an intent "to make the carrying of a weapon during a felony a separate crime . . . ." Here too, the Legislature's use of the phrase "in addition to" dictates that the expenditures should be separate from any obligation of a person to support the minor. Moreover, the term "substitute" is defined as "a person or thing that takes the place or function of another." *Merriam Webster's Collegiate Dictionary* (2003); see *Klooster v City of Charlevoix*, 488 Mich 289, 304; 795 NW2d 578 (2011) (explaining that where a statute does not define a term, a dictionary may be consulted to define it). Therefore, the Legislature's use of the phrase "not in substitution for" dictates that the expenditures should not take the place of any obligation of a person to support the minor.

Our interpretation of the plain language of MCL 554.539(3)—that expenditures should be separate from, and not take the place of, any obligation of a person to support the minor—is consistent with the income tax consequences applied to UTMA accounts by the Internal Revenue Service. Gifts to minors have been recognized as beneficial for purposes of income-tax savings because income from the gifts is taxed at a minor's rate, which is often lower than that of an adult donor. See *Watling v Wating*, 127 Mich App 624, 630; 339 NW2d 505 (1983). But where a parent donor uses the income from a gift to support a child, the income is taxable to the parent. *Garriss Investment Corp v Comm of Internal Revenue*, 43 TCM (CCH) 396 (1982).[2]

Further, MCL 554.539(1) provides that payments should be made "without regard to the duty or ability of the custodian personally or of any other person to support the minor[.]" The term "regard" is defined by *Random House Webster's College Dictionary* (2001) as "to take into

---

[2] We note that *Garriss* interpreted the Uniform Gifts to Minors Act (UGMA), which preceded the UTMA. In Michigan and the applicable statute in *Garriss*, the UGMA did not expressly require expenditures to be "in addition to" and "not in substitution for" an obligation of a person to support the minor. MCL 554.454(2), repealed by 1998 PA 433. Rather, before the UTMA was enacted, MCL 554.454(2) provided, in relevant part, "The custodian shall . . . expend for the minor's benefit, so much of or all the custodial property as the custodian deems advisable for the support, maintenance, education, and benefit of the minor . . . ."

-5-

account; consider." Thus, the plain language of subsection (1) dictates only that the custodian make expenditures without considering the duty or ability of the custodian or another person to support the minor. Unlike subsection (3), subsection (1) does not address whether those expenditures can or cannot be used to support the minor.

The record demonstrates that defendant and Waldman were obligated to pay plaintiffs' medical expenses, first as parents of plaintiffs, *Manley*, 127 Mich App at 453, and then by court order following their divorce. The 1997 judgment of divorce obligated defendant to pay 52% of plaintiffs' medical expenses, making no distinction between network- or out-of-network expenses. The 2001 order required Waldman, alone, to pay for out-of-network medical expenses. Because defendant, Waldman, or both defendant and Waldman were obligated to pay for plaintiffs' out-of-network medical expenses, and the district court found that defendant used the UTMA money to reimburse himself for those expenses, we conclude that the reimbursement substituted or took the place of an obligation of a person to support the minor, contrary to MCL 554.539(3). Defendant therefore wrongfully exerted dominion over plaintiffs' UTMA money, and the circuit court properly reversed the district court's finding that defendant properly withdrew the money to reimburse himself for medical expenses.

We note that the fact that defendant personally paid the children's medical expenses, subsequently reimbursed himself for those payments with money in the UTMA accounts, and then used that money to pay his legal fees, is not the defining principle of our decision. Had UTMA money been withdrawn and paid to the children's medical providers directly, the payments would still have taken the place of an obligation of defendant, Waldman, or both defendant and Waldman, contrary to MCL 554.539(3). We emphasize that because defendant had an obligation to pay the children's medical expenses, under MCL 554.539, defendant was neither authorized to use UTMA money to satisfy those expenses nor to reimburse himself from a UMTA account for payments he made from his own separate funds. To the extent that the circuit court reversed the district court's finding that defendant did not wrongfully exert dominion over plaintiffs' money in the UTMA accounts because plaintiffs had already received the benefit of the medical services (i.e., reimbursed defendant instead of paying providers directly), we conclude that the circuit court reached the right result for the wrong reason. See *Gleason v Michigan Dep't of Trans*, 256 Mich App 1, 7; 662 NW2d 822 (2003).

III

Plaintiffs argue that the circuit court erred by affirming the district court's finding that plaintiffs failed to demand the return of their money because, as a matter of law, no demand was required. We agree.

"MCL 600.2919a(1) provides in part, 'A person damaged as a result of . . . the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees: (a) Another person's stealing or embezzling property or converting property to the other person's own use.' " *Aroma*, 303 Mich App at 446-447, quoting *Lawsuit*, 261 Mich App at 591.

> 1 Restatement, Torts, § 223, addresses the ways in which a conversion may be committed:

'A conversion may be committed by

'(a) intentionally dispossessing another of a chattel,

'(b) intentionally destroying or altering a chattel in the actor's possession,

'(c) using a chattel in the actor's possession without authority so to use it,

'(d) receiving a chattel pursuant to a sale, lease, pledge, gift or other transaction intending to acquire for himself or for another a proprietary interest in it,

'(e) disposing of a chattel by a sale, lease, pledge, gift or other transaction intending to transfer a proprietary interest in it,

'(f) misdelivering a chattel, or

'(g) refusing to surrender a chattel on demand.'

However, liability for conversion does not arise under terms of this section if the actor is privileged to dispose of the chattel. 1 Restatement, Torts, § 222. [*Thoma v Tracy Motor Sales, Inc*, 360 Mich 434, 438; 104 NW2d 360 (1960).]

In Prosser & Keeton, *Torts* (5th ed), § 15, pp 93-100, Professor Prosser distinguishes between acquiring possession and withholding possession:

The defendant may, first of all, wrongfully acquire possession of the plaintiff's chattel. The defendant may without legal justification, take it out of the plaintiff's possession, or that of a third person . . . In all such cases the taking itself is wrongful, and the tort is complete without any demand for the return of the goods.

* * *

Where there has been no wrongful taking or disposal of the goods, and the defendant has merely come rightfully into possession and then refused to surrender them, demand and refusal are necessary to the existence of the tort.

In *Trail Clinic, PC v Bloch*, 114 Mich App 700, 703-704; 319 NW2d 638 (1982), a medical clinic advised an insurance company to send payments owed to a doctor to the clinic, but the record showed that the doctor had already stopped working for the clinic. The clinic then endorsed and deposited checks from the insurance company, which the doctor was owed for services rendered at a new employer. *Id.* This Court explained, "A demand is unnecessary . . . where the property has been wrongfully appropriated by the defendant for his own use and benefit." *Id.* at 706. Under the facts of *Trail Clinic*, the doctor's new employer was not required to prove a demand for the checks was made. *Id.* at 706-707.

In *Hank v Lamb*, 310 Mich 81, 84-85; 16 NW2d 671 (1944), the plaintiff furnished bottles to the defendants to bottle wine for the plaintiff. The plaintiff never demanded the return of the bottles, and the defendants never refused to furnish them. *Id.* at 91. Absent a demand, the

plaintiff could not establish conversion and the defendants were not liable for the value of the bottles. *Id.* at 91-92. See also *Gum v Fitzgerald*, 80 Mich App 234, 234-236; 262 NW2d 924 (1977) (where the defendants landlords gave the plaintiffs tenants an eviction notice, testified that the tenants planned to leave immediately, and the landlords subsequently changed the lock on the rental, the landlords' withholding of the tenants' property inside the rental constituted a conversion because the tenants demanded the property and the landlords refused).[3]

The facts here establish that defendant acquired, and did not just withhold, possession of the money in the UTMA accounts. Prosser & Keeton, § 15. Like the clinic in *Trail Clinic*, which deposited another's payment into its own account, defendant intentionally withdrew the money in plaintiffs' UTMA accounts and then used it to pay his attorney. We conclude that the circuit court erred by affirming the district court's finding that plaintiffs failed to demand the return of their money because, as a matter of law, no demand was required.

IV

Next, plaintiffs argue that the circuit court erred by affirming the district court's ruling, which declined to award treble damages. We disagree. We first reject plaintiffs' claim that the district court's decision was beyond the scope of its authority on remand, for the reason that at the remand hearing, plaintiffs requested the district court to issue a ruling on treble damages. "A party may not claim as error on appeal an issue that the party deemed proper in the trial court because doing so would permit the party to harbor error as an appellate parachute." *Bates Assoc, LLC v 132 Assoc, LLC* , 290 Mich App 52, 64; 799 NW2d 177 (2010). We further reject plaintiff's claim of error on this issue because an award of treble damages is within a court's discretion, *Aroma*, 303 Mich App at 451, and here, plaintiffs cannot demonstrate that the district court's ruling was outside the range of principled outcomes. The district court ruled that it would not award treble damages, which are designed to penalize or punish "dishonest defendants," *Alken-Ziegler, Inc v Hague*, 283 Mich App 99, 104; 767 NW2d 668 (2009), because defendant's action in withdrawing funds from the accounts, rather than being rooted in dishonest motives, was instead in reliance on advice defendant received from his financial planner. We find the district court's decision to be within the range of principled outcomes, and thus, the circuit court did not err by affirming the district court's decision.

V

Last, defendant argues that this Court should dismiss plaintiffs' entire appeal under MCR 7.109(B)(1)(a) because plaintiffs failed to provide transcripts for the hearings on November 16, 2011, and May 21, 2012. First, although MCR 7.109(B)(1)(a) applied to plaintiffs' appeal to the circuit court, the applicable court rule here is MCR 7.210(B)(1)(a), which provides:

> The appellant is responsible for securing the filing of the transcript as provided in this rule. Except in cases governed by MCR 3.977(J)(3) or MCR 6.425(G)(2), or

---

[3] Neither *Gum* nor *J Franklin* is binding on this Court because *Gum* is a pre-1990 decision from this Court, MCR 7.215(J)(1), and *J Franklin* is unpublished, MCR 7.215(C)(1).

as otherwise provided by Court of Appeals order or the remainder of this subrule, the appellant shall order from the court reporter or recorder the full transcript of testimony and other proceedings in the trial court or tribunal. Once an appeal is filed in the Court of Appeals, a party must serve a copy of any request for transcript preparation on opposing counsel and file a copy with the Court of Appeals.

Second, the November 16, 2011 transcript was provided. We therefore reject that portion of defendant's argument.

Third, defendant claims that, at the May 21, 2012 hearing, plaintiffs waived their argument that the district court's treble damages decision exceeded the scope of remand, and dismissal is required because this Court cannot review defendant's waiver claim because plaintiffs failed to provide the transcript for the May 21, 2012 hearing. We agree that plaintiff failed to provide a transcript dated May 21, 2012, but it is unclear from the register of actions whether any proceedings occurred on the record that day. Moreover, dismissal is not appropriate because this Court generally only declines to consider an issue when the appellant has failed to provide a relevant transcript. See *People v Dunigan*, 299 Mich App 579, 587-588; 831 NW2d 243 (2013); *PT Today, Inc v Comm'r of Fin & Ins Servs*, 270 Mich App 110, 151-152; 715 NW2d 398 (2006). We need not decline to address the argument regarding treble damages and the scope of the remand order, however, because we concluded earlier in this opinion that plaintiffs waived the argument at the remand hearing, which was transcribed for appeal. Any additional waiver by plaintiffs on May 21, 2012 would be cumulative.

## VI

We affirm the portion of the circuit court's order reversing the portion of the district court's decision that defendant did not wrongfully exert dominion over the money in the UTMA accounts, we reverse the portion of the circuit court's order affirming the district court's ruling regarding plaintiffs' demand for the return of the money, and we affirm the portion of that same circuit court order regarding treble damages. We remand to the district court for entry of a judgment for plaintiffs. We do not retain jurisdiction. No costs, as none of the parties prevailed in full. MCR 7.219.

/s/ Kurtis T. Wilder
/s/ E. Thomas Fitzgerald
/s/ Donald S. Owens