# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. E. WEBER, Minor.

UNPUBLISHED
June 23, 2016

Nos. 330130 and 330134
Lenawee Circuit Court
Family Division
LC No. 14-000091-NA

Before: TALBOT, C.J., and MURRAY and SERVITTO, JJ.

PER CURIAM.

In these consolidated appeals, respondents appeal as of right the orders of the trial court terminating their parental rights to the minor child under MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist), (g) (failure to provide proper care and custody), and (j) (risk of harm if returned to parents). We affirm.

## I. FACTS

Respondents are the biological parents of the minor at issue, AE, who was born in December 2013. Throughout these proceedings, respondent father was married to another woman with whom he has three children. Respondent father, respondent mother, and respondent father's wife maintained a communal relationship and resided with their children in one household. AE tested positive for tetrahydrocannabinol (THC), one of the chemicals active in marijuana, at birth and respondent mother tested positive for THC while she was observed breast feeding six week old AE.

In February 2014, police were dispatched to the home in response to a report of domestic violence between respondents. Subsequently, police arrested respondent mother on three outstanding misdemeanor warrants and placed her in the Lenawee county jail. The petition reported that in April 2014, while respondent mother was still in jail, respondent father assaulted his wife, who left the home, leaving all four children in respondent father's care. When she returned the following day to retrieve her children, she saw bruising on the face of her youngest child.

The child became a temporary ward of the court following a hearing on April 24, 2014; respondent mother was released from jail five days later. Respondents, thereafter, entered into case service plans/parent agency agreements which required the parents to participate in services to address their various mental health, substance abuse, domestic violence, parenting skills, and

-1-

anger management issues, and to regularly attend visitation and control their emotions in the presence of the child.

Respondent mother's participation was inconsistent at best. She struggled particularly with addressing her mental health issues. A psychological examination found her to be subject to "intense and erratic moods, irrational suspicions, hostile outbursts, impulsive and unpredictable behavior, and periods of confused, disorganized, and delusional, illogical, and bizarre thinking and impaired judgment," while at the same time being unaware that her mental state was unstable. She refused to take the psychotropic medication prescribed for her because she was trying to conceive, and it does not appear she followed her caseworker's recommendation to talk to her psychiatrist about safe but effective alternatives. She began individual therapy in May 2014, but by December decided that it was distracting her from getting her child back and announced that she was finished with therapy. Her therapist noted in her termination report that respondent mother was guarded and suspicious, demonstrated "patterns of distorted thinking," and had poor insight into her own behavior and how her choices affected the limitations on supervised visitation with AE and the child's continuing placement in foster care. Respondent mother was arrested and arraigned in January 2015 on charges of: 1) fleeing and eluding; and, 2) assault, battery, or resisting a police officer, and remained incarcerated throughout the remainder of these proceedings.

Although respondent father's participation in mental health services was inconsistent, progress was the greater issue. He attended counseling with David Lowrance, paying for the service with Medicaid because of petitioner's policy of not providing services for parents convicted of criminal sexual conduct (he had been convicted in 2000 of second-degree criminal sexual conduct (CSC II)). He stopped going to counseling when his Medicaid lapsed in July 2014, but resumed in September 2015 once he obtained insurance again. Meanwhile, at petitioner's recommendation, he enrolled in and attended a Family Violence Accountability Program (FVAP) directed by Michael Snyder-Barker. After a month in the program, Snyder-Barker reported that respondent father had attended all the sessions and "appears to be 'in compliance' with the program," but that he "is fairly narcissistic and egocentric," and struggled with accepting "that there are more ideas than his own." Snyder-Barker related that respondent father "admits that he reaches over and hits one of his partners in the face for saying or doing something," and that he does this reflexively, without thinking. In May 2015, respondent father underwent a psychological evaluation with Patricia Muldary, Ph.D. who noted that his psychiatrist had diagnosed him with intermittent explosive disorder (IED) and was treating him with medication.

At the termination hearing, respondents' assigned caseworker testified that respondents had failed to comply with their case-service plans. The caseworker testified that respondent father had availed himself of services but had not benefitted from them, resulting in continuing concerns about his anger and violent outbursts. The caseworker explained that respondent father had been on and off his medication and inconsistent in attending individual counseling. She reported similarly for respondent mother, reminding the court that she had been discharged unsuccessfully from individual counseling, had spottily taken her prescribed medication, and had failed to provide documentation to support her assertion that she was taking her medication regularly while in jail.

Other testimony included that of respondents' service providers who, with the exception of respondent father's personal therapist, did not recommend returning the child to either parent. Respondent father's personal therapist testified that respondent father was "very cooperative" and was not a threat to his child's safety. It became apparent during cross-examination, however, that the therapist based his assessment on respondent father's self-reporting and that respondent father had not told the therapist about the assault on his now estranged wife, his interactions with respondent mother, or the recent angry outburst that resulted in his being banned from petitioner's premises. The supervisor of respondents' visitations with the minor child reported that her primary concern was respondents' volatile relationship and respondent father's angry outbursts. She said that respondents argued frequently and that their arguments became so disruptive toward the end of 2014 that respondent father decided they should have separate visits.

Both respondents testified. Respondent father explained that, despite having to pay for services himself, he was doing everything petitioner asked of him, including abstaining from marijuana, although he had a medical marijuana card and smoked marijuana to cope with jaw pain related to clenching. He explained that, his explosive anger notwithstanding, he would not hurt anyone and apologized for his last outburst at petitioner's offices, explaining that he became agitated when members of petitioner's staff misconstrued as a direct threat his statement that he prayed for harm to come to his caseworker. Respondent father's attempt to explain what he meant and that his practice of praying for harm to come to those who had wronged him occasioned several questions from the court about his religious views. Respondent father and respondent mother said they were committed to living together upon respondent mother's release from jail.

The trial court issued separate termination orders declaring that clear and convincing evidence established that termination of each respondent's parental rights was warranted under MCL 712A.19b(3)(c)(*i*), (g), and (j), and that termination was in the child's best interests.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

An appellate court "review[s] for clear error . . . the court's decision that a ground for termination has been proven by clear and convincing evidence . . . ." *In re Trejo Minors*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). See also MCR 3.977(K). Whether reasonable services were offered to effectuate reunification "ultimately relates to the issue of the sufficiency" of the evidence, which we also review for clear error. *In re Fried*, 266 Mich App 535, 541, 542-543; 702 NW2d 192 (2005). Whether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court's findings regarding the child's best interests are reviewed under the clearly erroneous standard. MCR 3.977(K).

A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake was made. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). To be clearly erroneous, a decision must be more than maybe or

probably wrong. *In re Sours*, 459 Mich 624, 633; 593 NW2d 520 (1999); *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009). Further, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989). See also MCR 2.613(C).

Unpreserved claims of error are reviewed for plain error affecting substantial rights. *Rivette v Rose-Molina*, 278 Mich App 327, 328; 750 NW2d 603 (2008).

## B. STATUTORY GROUNDS

The trial court terminated respondents' parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j), which provide as follows:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *
>
> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

### 1. DOCKET NO. 330130

#### a. *Return of the minor*

Respondent mother first argues that the trial court erred by not returning AE to her when she was released from jail in April 2014, as the condition that led to the child's adjudication had

been remedied at that time. Because this issue comes to us unpreserved, we review it for plain error effecting substantial rights. *Rivette*, 278 Mich App at 328.

Respondent mother bases her position on the Michigan Children's Foster Care Manual's instruction that "[o]nce the presenting problem which led to the child's out-of-home placement has been resolved and the safety of the child is ensured, the child must be promptly returned to parental care." Respondent mother's argument presumes that the only reason AE was removed from her care was because she was in jail. However, the April 21, 2014 petition seeking jurisdiction over AE also noted respondent mother's criminal history, her mental health issues, a domestic violence incident between she and respondent father, and AE testing positive for THC at birth.

Respondent mother admitted to having been diagnosed as having cannabis disorder, bipolar disorder, and posttraumatic stress disorder, and failing to follow through with recommendations on how to address these conditions. She also admitted that a Child Protective Services investigation was opened after the child's birth because AE's meconium tested positive for THC and that she tested positive for THC while breastfeeding the child. In addition, she admitted that police were dispatched to her home because of a domestic violence incident between her and respondent father in February 2014, her arrest on outstanding misdemeanor warrants, her February 2014 conviction for assaulting a police officer, and a conviction for assault and battery as a juvenile. Clearly, the court's assumption of jurisdiction was based on factors other than her inability to care for the child while in jail. Under these circumstances, it was not plain error for the trial court to continue to exercise jurisdiction over the minor. *Id*.

Respondent mother further contends that the trial court erred at the September 2, 2014 dispositional review by denying her request to have the child placed in her custody. At the hearing, respondent mother argued that the child should be returned because she "has been actively engaging and participating in all the services that have been asked of her" and that there was nothing she had not begun or completed. Petitioner and the guardian ad litem opposed the request on the ground that it was too early to tell whether respondent mother was going to comply with and benefit from services. The court denied the motion, explaining that "there is enough information in the court file to cause concern for the court."

Record evidence supports the trial court's decision. Although respondent mother was doing well in the Home Again program, she denied the need for psychiatric or psychological help. Further, reports from her therapist indicated that respondent mother was not fully engaged in the counseling sessions and was not taking her prescribed psychotropic medication. Given the information available to the court at the dispositional review hearing, its decision to maintain the child's placement and schedule another 90-day review hearing was not clearly erroneous. *In re JK*, 468 Mich at 209-210.

b. *Termination decision*

Respondent mother argues that she substantially complied with her case-service plans and that the trial court clearly erred by basing its finding regarding the continued existence of the conditions that led to adjudication on evidence she characterizes as stale.

Respondent mother's case-service plans required her to attend, participate in, and benefit from individual counseling. In addition, she was required to attend psychiatric appointments and take her medications as prescribed. However, the record shows that respondent mother began individual counseling but was discharged at her own request in December 2014, with a notation on her termination report indicating that she had not benefitted from therapy. In addition, respondent mother did not regularly take her prescribed medication prior to her 2015 incarceration. And although respondent mother asserted at the termination hearing that she was taking her medication regularly while incarcerated, she never supplied her caseworker with documentation to support her assertion. On the contrary, her caseworker testified that the only documentation she possessed indicated that respondent mother's psychiatrist had not prescribed anything for her in 2015.

At the termination hearing, Thomas Muldary, Ph.D., reiterated that respondent mother was incapable of parenting the minor when he evaluated her in June 2014 and concluded that even with medication and counseling it would be at least one or two years, possibly longer, before respondent mother could become an effective parent.

Given the lack of evidence that respondent mother benefitted from individual therapy or followed through with treatment recommendations, nothing shows that her mental health condition at the time of the hearing differed significantly from what it was in June 2014. Further, considering respondent mother's resistance to addressing her mental health issues, the court did not clearly err in concluding that she will not be able to rectify the conditions that led to adjudication within a reasonable time, considering the minor's age. MCL 712A.19b(3)(c)(*i*).

Respondent mother argues that petitioner did not make reasonable efforts toward reunification. Specifically, respondent mother contends that petitioner did not narrowly tailor her case-service plans to address the conditions that led to adjudication by providing her with joint counseling with respondent father and with anger management classes. A claim that a respondent was not provided reasonable services directed toward reunification is relevant to the sufficiency of the evidence for termination of parental rights. *In re Fried*, 266 Mich App at 541.

In a child-protective proceeding where petitioner has removed a child from his or her home, reasonable efforts must be made to reunify the child and the family in all cases except where a statutory exception applies. MCL 712A.19a; see also *In re LE*, 278 Mich App 1, 18; 747 NW2d 883 (2008) ("In general, petitioner must make reasonable efforts to rectify conditions, to reunify families, and to avoid termination of parental rights."). Respondents' caseworker indicated that joint counseling could be considered once respondents made some progress on their individual mental health issues. However, respondent mother was discharged from individual counseling in December 2014, without having benefitted from the service, and respondent father stopped attending individual counseling in July 2014 (albeit due to medical insurance coverage issues). Therefore, respondents never made the individual progress petitioner was looking for before referring them to joint counseling.

With regard to anger management, respondent mother protested the addition of anger management classes to her case service plan at the November 18, 2014 review hearing and assured the court that she would address her anger issues in individual counseling. Having asserted her preference and willingness to assume responsibility for treating her anger issues in

individual counseling, respondent mother cannot now argue that petitioner erred by not referring her to anger management classes. *Hoffenblum v Hoffenblum*, 308 Mich App 102, 117; 863 NW2d 352 (2014) ("A party may not claim as error on appeal an issue that the party deemed proper in the trial court . . . .") (internal quotation marks and citation omitted).

Respondent mother next contends that petitioner did not make reasonable efforts toward reunification by providing her with services during her 2015 incarceration. An incarcerated respondent in a termination proceeding has to be given an opportunity to participate meaningfully in his or her case-service plan. *In re Mason*, 486 Mich 142, 156-157; 782 NW2d 747 (2010). The record in the instant case shows that, although jail officials prevented the caseworker from arranging for respondent mother to see the therapist whose care she had voluntarily left in December 2014, petitioner made efforts to engage respondent mother in the services available that could further her progress toward the goal of reunification.

The caseworker learned that the jail offered Narcotics Anonymous meetings and a women's substance abuse group and recommended that respondent mother arrange to participate in them, which she did. In addition, the caseworker attempted to maintain contact with respondent mother by visiting twice (she was denied on one occasion), sending her notes about AE's progress that included self-addressed stamped envelopes so respondent mother could write back, arranging for respondent mother to receive a picture of the child, and mailing her updated case service plan. Respondent mother also participated in hearings in this matter while she was incarcerated.

Finally, a crucial part of respondent mother's case service plan was to treat her mental health issues by taking prescribed medication as ordered. According to her own testimony, respondent mother was taking her medication while in jail (although she provided no supporting documentation).

Considering the efforts petitioner made toward reunification prior to respondent mother's 2015 incarceration, and viewing its efforts during respondent mother's incarceration in light of the circumstances, the trial court's determination that petitioner made reasonable efforts at reunification was not clearly erroneous. *In re Fried*, 266 Mich App at 541.

Based on the foregoing, we conclude that the trial court did not clearly err by finding that petitioner made reasonable efforts at reunification, MCL 712A.19a(2), and that clear and convincing evidence exists to terminate respondent mother's parental rights under MCL 712A.19b(3)(c)(*i*). We further conclude that respondent mother's persistent failure to address her mental health issues supported the trial court determinations under MCL 712A.19b(3)(j).[1]

---

[1] Because only one ground for termination need be established, *In re Olive/Metts Minors*, 297 Mich App 35, 41; 823 NW2d 144 (2012), we do not consider whether the trial court clearly erred in terminating respondent mother's parental rights under § 19b(3)(g).

## 2. DOCKET NO. 330134

### a. *Termination decision*

Respondent father argues that clear and convincing evidence did not establish grounds for termination under § 19b(3)(c)(*i*) because service providers testified to his progress. Snyder-Barker testified that respondent father became less combative as the FVAP progressed and "seemed to develop an intellectual understanding of the concepts in a way that he could speak the ideas." However, Snyder-Barker did not see progress being made with respect to respondent father's "use of violence" and "[t]he idea that his opinion is the only opinion." Snyder-Barker testified that he did not think respondent father had improved enough to change Snyder-Barker's ideas about respondent father's parenting ability.

Lowrance opined that respondent father was not a danger to his children or anyone else. However, Lowrance based his opinion of respondent father's progress on the latter's self-reporting, and cross-examination revealed that respondent father may not have been forthcoming with Lowrance about his assault of his wife or his interactions with respondent mother. Additionally, Dr. Patricia Muldary testified that respondent father produced a "fake good profile" during his May 2015 psychological evaluation, thus implying that respondent father actively sought to conceal rather than address his anger-fueled behavior.

Additionally, respondent father argues that his outburst at petitioner's offices was attributable to his poor rapport with petitioner's staff rather than his lack of progress addressing his IED. He argues that his ability to calm down afterward and taking responsibility for the outburst signifies his progress. His characterization of his behavior at the offices as an anomaly is simply a self-serving attempt to neutralize the real import of the evidence, which is that it belies his assertion that he was benefiting from services directed at dealing with his anger issues. In short, the behavior he cites as proof of progress essentially mirrors the behavior that initiated these proceedings. For these reasons, the evidence is clear and convincing that the conditions that led to respondent father's adjudication continued to exist more than 182 days later. MCL 712A.19b(3)(c)(*i*).

In addition, Lowrance testified that it typically takes one to two years to work through IED although could not be specific with regard to respondent father's time frame. Dr. Patricia Muldary said that respondent father had potential, but it would remain unrealized if he did not open himself to the possibility of change. Given that, more than a year after the initial petition respondent father continued to resort to verbal violence and to be evasive with his mental health service providers, the court did not err in finding there was no reasonable likelihood that the conditions that led to his adjudication would be rectified within a reasonable time, given the child's age. MCL 712A.19b(3)(c)(*i*).

Respondent father claims that petitioner violated its statutory duty to provide reasonable efforts at reunification when it did not provide him with services because of his 2003 conviction for CSC II. However, he overlooks MCL 712A.19a(2)(d), which exempts petitioner from making reunification efforts where "a parent is required by court order to register under the sex

offender registration act."[2]  Respondent father admitted to the allegation in the initial petition that he was a Tier 2 registered sex offender as a result of his 2000 CSC II conviction.

Based on the foregoing, we conclude that the trial court did not clearly err by finding that petitioner made reasonable efforts at reunification, MCL 712A.19a(2), and that clear and convincing evidence exists to terminate respondent mother's parental rights under MCL 712A.19b(3)(c)(*i*).  We further conclude that respondent father's persistent failure to address his anger issues supported the trial court's determinations under MCL 712A.19b(3)(j).

b. *Best interests*

If the trial court finds "that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made."  MCL 712A.19b(5).  "In deciding whether termination is in the child's best interest, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home."  *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted).

Respondent father argues that, even if the statutory grounds for termination are established by clear and convincing evidence, termination is not in the child's best interests. Respondent father contends that his parenting skills and the strong bond he shares with AE weigh against termination, and further contends that it was clear error for the trial court to consider his religious views and his communal relationship with his estranged wife and respondent mother.

We agree that respondent father's communal relationship was not relevant, not least of all because it ended before the child's removal and never factored into these proceedings.  With respect to respondent father's religious views, the trial court objected to respondent father requesting that his deity kill someone on his behalf as being inconsistent with the trial court's personal religious beliefs.  However, the trial court does not cite respondent father's theological beliefs as a reason why termination is in the best interests of the child.  Rather, the trial court seems to be using respondent father's testimony on the matter as evidence of a violent personality trait that has not been successfully addressed and renders him a danger to his children.

In addition, even if the trial court had erred by considering respondent father's beliefs in its best-interest analysis, the error would not have required reversal as the trial court's decision was otherwise sound.  MCL 2.612(A).  Respondent father's substantial noncompliance with his case service plans, the considerable time AE spent in foster care and how well she was being

---

[2] MCL 28.721 *et seq.*

cared for there, her need for permanency and stability, and the likelihood that she would be adopted weighed in favor of termination being in the child's best interests. No error is shown.

Affirmed.

/s/ Michael J. Talbot
/s/ Christopher M. Murray
/s/ Deborah A. Servitto