*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PL,

               Petitioner-Appellant,

v

LV,

               Respondent-Appellee.

UNPUBLISHED
March 17, 2025
10:17 AM

No. 368396
Oakland Circuit Court
LC No. 2023-520437-PH

Before: MURRAY, P.J., and K. F. KELLY and D. H. SAWYER*, JJ.

PER CURIAM.

Petitioner appeals by right the trial court's order granting respondent's motion to terminate an ex parte nondomestic relationship personal protection order ("PPO"). Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

On June 1, 2023, petitioner filed a petition for an ex parte nondomestic PPO alleging that: (1) respondent appeared at petitioner's residence uninvited; (2) respondent threatened petitioner, via text message, by informing petitioner that she possessed a firearm; (3) respondent called petitioner's cellphone in order to yell at petitioner and call petitioner various inappropriate names; and (4) respondent posted photographs of petitioner on respondent's social media without petitioner's consent. Petitioner attached screenshots of various conversations between herself and respondent, in addition to a police report detailing similar allegations as the petition.

In the verified statement accompanying the petition, petitioner stated that she was in a relationship with respondent's prior romantic partner, AM, with whom respondent shared children. The trial court subsequently entered an ex parte nondomestic PPO against respondent, barring respondent from (1) engaging from any conduct equivalent to stalking, as defined under MCL 750.411h and MCL 750.411i; (2) threatening to kill or physically injure petitioner; (3) posting a

---

* Former Court of Appeals Judge, sitting on the Court of Appeals by Assignment.

-1-

message through the use of any medium of communication to petitioner; and (4) any contact with third parties with the intent to violate the instituted PPO.

Respondent moved to terminate the ex parte nondomestic PPO, stating that petitioner was harassing respondent because respondent was the mother of AM's children, and AM was petitioner's romantic partner. Respondent also stated that petitioner posted respondent's personal information on social media, petitioner would repeatedly drive down the street of respondent's residence, and respondent filed numerous police reports detailing petitioner's threats and concerning conduct. The trial court held a hearing on respondent's motion to terminate the ex parte nondomestic PPO and concluded that petitioner failed to establish a justification for the continuance of the contested PPO. This appeal followed.

## II. STANDARDS OF REVIEW

The Court reviews the trial court's decision to grant or deny a PPO, including a decision to terminate a PPO, for an abuse of discretion. *CAJ v KDT*, 339 Mich App 459, 463; 984 NW2d 504 (2021). "An abuse of discretion occurs when the court's decision falls outside the range of principled outcomes." *Id*. Any underlying findings of fact made by the trial court are reviewed for clear error. *Id*. "The clear-error standard requires us to give deference to the lower court and find clear error only if we are nevertheless left with the definite and firm conviction that a mistake has been made." *Id*. "Whether due process has been afforded is a constitutional issue that is reviewed de novo." *Id*.

In general, an issue is preserved for appeal if it was raised in or decided by the trial court. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). "The issue preservation requirements only impose a general prohibition against raising an issue for the first time on appeal." *Id*. The particular issues petitioner raises on appeal regarding the violation of her due-process rights, and respondent's fabricated testimony and proofs, were not raised or addressed during the lower court proceedings. Therefore, these issues are unpreserved for appeal. See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg*, 347 Mich App 280, 290; 14 NW3d 472 (2023).

"This Court recently held that our Supreme Court precedent requires that, in general civil cases, we apply the raise-or-waive rule and, thus, the plain-error standard does not apply in those cases." *HMM v JS*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367586); slip op at 4, citing *Tolas Oil*, 347 Mich App at 290. "By failing to raise [an] issue in the trial court, [a] plaintiff[] deprive[s] the trial court of the opportunity to correct it in a timely and equitable manner and waive[s] the error." *Tolas Oil*, 347 Mich App at 290. Moreover, "because of the potential criminal consequences for a respondent's violation of a PPO and the liberty interests at stake, we conclude that plain-error review also applies to unpreserved issues in PPO proceedings." *HMM*, ___ Mich App at ___; slip op at 4. Thus, while petitioner's issues would be deemed waived under *Tolas Oil*, we will still address the issues under the plain-error standard, under which "[u]npreserved issues are reviewed for plain error affecting substantial rights. Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *CAJ*, 339 Mich App at 464 (citation omitted).

## III. ANALYSIS

Petitioner argues that the trial court erred when it granted respondent's motion to terminate the ex parte nondomestic PPO. We disagree.

PPOs serve, in part, to protect persons "who are maliciously followed, harassed, or intimidated by stalkers." *Nastal v Henderson & Assoc Investigations, Inc*, 471 Mich 712, 721; 691 NW2d 1 (2005). "Except as otherwise provided in MCL 600.2950 and MCL 600.2950a, an action for a PPO is governed by the Michigan Court Rules, with MCR 3.701 *et seq.*, applying to PPOs against adults." *TT v KL*, 334 Mich App 413, 439; 965 NW2d 101 (2020), citing MCR 3.701(A). MCL 600.2950a, the nondomestic PPO statute, "addresses stalking behavior or conduct that is not limited to certain existing relationships." *Id*. MCL 600.2950a(1) states:

> [A]n individual may petition the family division of circuit court to enter a personal protection order to restrain or enjoin an individual from engaging in conduct that is prohibited under section 411h, 411i, or 411s of the Michigan penal code. A court shall not grant relief under this subsection unless the petition alleges facts that constitute stalking as defined in section 411h or 411i, or conduct that is prohibited under section 411s, of the Michigan penal code. Relief may be sought and granted under this subsection whether or not the individual to be restrained or enjoined has been charged or convicted under section 411h, 411i, or 411s of the Michigan penal code for the alleged violation.

As relevant in the instant matter, MCL 750.411h pertains to stalking, MCL 750.411i concerns aggravated stalking, and MCL 750.411s relates to online stalking. The petitioner maintains the burden of establishing reasonable cause that the PPO should be granted, and that the PPO should remain in effect if the respondent moves for its termination. *JLS v HRS*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368375); slip op at 3.

## A. DUE PROCESS

Petitioner first contends that respondent's "falsified service" and her failure to properly serve petitioner with respondent's motion to terminate the ex parte nondomestic PPO amounted to a violation of petitioner's due-process rights. We disagree.

MCR 2.119(C) governs the time for service and filing of motions and responses, and it states, in pertinent part:

> (C) Time for Service and Filing of Motions and Responses.
>
> (1) Unless a different period is set by these rules or by the court for good cause, a written motion (other than one that may be heard ex parte), notice of the hearing on the motion, and any supporting brief or affidavits must be served as follows:
>
>> (a) at least 9 days before the time set for the hearing, if served by first-class mail, or
>
>> (b) at least 7 days before the time set for the hearing, if served by delivery under MCR 2.107(C)(1) or (2) or MCR 1.109(G)(6)(a).

The register of actions shows that respondent filed her motion to terminate the contested PPO on September 20, 2023. During the subsequent motion hearing on October 30, 2023, the trial court noted that respondent did not file a proof of service that she served petitioner with a copy of her motion to terminate the ex parte nondomestic PPO prior to the hearing. Petitioner asserted that she did not receive a copy of the motion despite respondent purportedly sending the document to the residence of petitioner's aunt. The trial court determined that it would provide copies of all the documents related to the underlying proceedings to the parties to address the various service issues, and then it would evaluate whether to continue with the hearing. A proper proof of service form was executed before the clerk and filed the day of the hearing. It is clear, therefore, that respondent failed to abide by the notice provisions iterated under MCR 2.119(C)(1)(a), as she did not serve a copy of her subject motion on petitioner within the pertinent timeframe.

Nevertheless, we disagree with petitioner's assertion that she was denied due process because of lack of proper notice. Both the United States Constitution and Michigan Constitution ensure that the state cannot deny any person the right to "life, liberty, or property, without due process of law." US Const Am XIV; Const 1963, art 1, § 17. "Due process requires fundamental fairness, which is determined in a particular situation first by considering any relevant precedents and then by assessing the several interests that are at stake." *HMM*, ___ Mich App at ___; slip op at 4 (quotation marks and citation omitted). Due-process protections are applicable to proceedings concerning a motion to terminate a PPO. *CAJ*, 339 Mich App at 468. "[A]t a minimum, due process of law requires that deprivation of life, liberty, or property by adjudication must be preceded by notice and an opportunity to be heard." *Bonner v Brighton*, 495 Mich 209, 235; 848 NW2d 380 (2014). "To comport with these procedural safeguards, the opportunity to be heard must be granted at a meaningful time and in a meaningful manner." *Id*. (quotation marks and citation omitted).

After the parties reviewed the pertinent documents during the motion hearing, the trial court stated:

> Okay. So let's see, the earlier motion was the motion to terminate, so [petitioner], I'll ask you. Having reviewed the documents that you have, the petition—while the respondent filed her motion to terminate within 14 days of when she was served the personal protection order, which means it's your responsibility and you hold the burden of proof to demonstrate to why it is you need a personal protection order. Are you prepared to proceed to demonstrate why you need a personal protection order today?

Petitioner responded affirmatively. The parties continued to testify and present their respective proofs before the trial court issued its ruling. Petitioner was present during the motion hearing, she advanced testimony regarding her alleged need for the continued institution of the PPO, offered evidence of respondent's alleged improper conduct, and contested respondent's arguments. See *Reed v Reed*, 265 Mich App 131, 159; 693 NW2d 825 (2005) ("Procedure in a particular case is constitutionally sufficient when there is notice of the nature of the proceedings and a meaningful opportunity to be heard by an impartial decision maker"). Thus, while respondent apparently neglected to provide a copy of her contested motion to petitioner, petitioner's procedural due-process rights were not violated.

Furthermore, when provided with the opportunity to postpone the hearing as a result of the defects in service, petitioner opted to proceed. See *Hoffenblum v Hoffenblum*, 308 Mich App 102, 117; 863 NW2d 352 (2014) ("A party may not claim as error on appeal an issue that the party deemed proper in the trial court because doing so would permit the party to harbor error as an appellate parachute") (quotation marks and citation omitted). As petitioner had notice of the hearing regarding respondent's motion to terminate the ex parte nondomestic PPO, the opportunity to be heard at the hearing, and her subsequent challenges were addressed by the trial court, petitioner is not entitled to relief on due-process grounds.

## B. TERMINATION OF PPO

Petitioner also argues that respondent's allegedly fabricated testimony and evidence impeded the trial court's "truth-seeking function" and its determination regarding the subject PPO. We disagree.

> [A] petitioner bears the burden of proof when seeking to obtain an ex parte PPO. Similarly, on a motion to terminate or modify the ex parte PPO, [the] burden of proof remains with a petitioner who seeks to establish a justification for the continuance of a PPO. In Michigan, there are two aspects of the "burden of proof"—the burden of persuasion and the burden of going forward with the evidence. Although the latter burden might shift throughout a proceeding as evidentiary presumptions rise and fall . . . the former burden *always* remains with the petitioner . . . . [*HMM*, ___ Mich App at ___; slip op at 6-7 (quotation marks and citations omitted).]

A court may not grant a nondomestic PPO "unless the petition alleges facts that constitute stalking as defined in section 411h or 411i, or conduct that is prohibited under section 411s, of the Michigan penal code." MCL 600.2950a(1). In the context of the statutory definition of "stalking," " '[c]ourse of conduct' means a pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose." MCL 750.411h(1)(a); MCL 750.411i(1)(a). "The trial court must consider the testimony, documents, and other evidence proffered and whether the respondent had previously engaged in the listed acts." *Hayford v Hayford*, 279 Mich App 324, 326; 760 NW2d 503 (2008). Furthermore, "regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *SP v BEK*, 339 Mich App 171, 176; 981 NW2d 500 (2021), quoting MCR 2.613(C).

During the motion hearing, respondent testified that petitioner was the individual harassing respondent with nightly phone calls asking for AM's whereabouts, and petitioner's escalating conduct resulted in respondent filing numerous police reports. Respondent further asserted that when AM was incarcerated, petitioner would use AM's cellphone to call and text respondent. Respondent alleged that petitioner would additionally drive past respondent's residence, and petitioner posted photographs of respondent's children on her social media. Respondent presented several police reports, in addition to screenshots of her cellphone call records and petitioner's social media posts.

Regardless of the authenticity of respondent's testimony and proofs, the burden rested on petitioner to demonstrate that respondent engaged in a course of conduct that constituted stalking

behavior to warrant the continuance of the contested PPO. See *Hayford*, 279 Mich App at 326 ("The petitioner bears the burden of establishing reasonable cause for issuance of a PPO and of establishing a justification for the continuance of a PPO at a hearing on the respondent's motion to terminate the PPO.") (citations omitted). Furthermore, respondent's testimony and proofs centered on petitioner's alleged stalking of respondent, as opposed to refuting petitioner's contentions regarding respondent's unlawful conduct.

In issuing its ruling, the trial court cited petitioner's allegations against respondent in her initial petition for an ex parte nondomestic PPO, in addition to a screenshot of a text message exchange between the parties, which was presented by petitioner. The court reasoned:

> But based on the allegations of the petition, I need two incidents, and I don't have even one incident because I don't see that [respondent] was threatening [petitioner] with a gun. I—I don't see [respondent] was threatening [petitioner] with a gun and at the time, the boyfriend was at [petitioner's] house and [respondent] dropped some stuff off at her—at the house—uninvited, unexpected. That's not a crime and I wouldn't consider that to be stalking.

The court further stated that while petitioner advanced that she was threatened by respondent after petitioner pursued legal action against AM, "that's not in the petition, even if she amended the petition and I believe that to be true . . . because it's not in her petition. It's [the] only instance. So under the statute, you still don't get a PPO because that's only one instance." Accordingly, the trial court did not rely on the allegedly fabricated proofs presented by respondent when reaching its decision; rather, the court determined petitioner failed to allege, and the court failed to find, two or more separate and noncontinuous acts as required by the stalking statute to justify maintaining the PPO. See *CNN v SEB*, 345 Mich App 151, 162; 4 NW3d 759 (2023), quoting MCL 750.411h(1)(a) ("To enter a PPO under MCL 600.2950a, the court must find that the respondent engaged in a 'course of conduct' 'composed of a series of 2 or more separate' acts"). Moreover, regarding any purported falsities in respondent's testimony, this Court gives deference to the trial court concerning the weight of the evidence and credibility of witnesses. See *SP*, 339 Mich App at 187. Thus, petitioner has failed to establish that the trial court abused its discretion when it granted respondent's motion to terminate the ex parte nondomestic PPO.

Affirmed.

/s/ Christopher M. Murray
/s/ Kirsten Frank Kelly
/s/ David H. Sawyer