**S T A T E   O F   M I C H I G A N**
**C O U R T   O F   A P P E A L S**

*In re* M. DOWNING, Minor.

UNPUBLISHED
July 11, 2017

No. 334925
Macomb Circuit Court
Family Division
LC No. 2016-000082-NA

Before: GADOLA, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating her parental rights to the minor child MD. The trial court terminated respondent's parental rights pursuant to MCL 712A.19b(3)(a)(*ii*) (parent deserted child for 91 or more days and has not sought custody), (g) (parent failed to provide proper care or custody and no reasonable expectation parent will provide proper care or custody within a reasonable time), (j) (reasonable likelihood child will be harmed if returned home), and (n)(*ii*) (the parent was convicted of a listed offense and continuation of the parent-child relationship would be harmful to the child). We affirm.

Respondent first argues that the trial court erred by exercising jurisdiction over MD. We disagree.

With respect to the preserved issue regarding whether the trial court properly exercised jurisdiction, this Court has held that "[j]urisdiction must be established by a preponderance of the evidence[,]" and that it "review[s] the trial court's decision to exercise jurisdiction for clear error in light of the court's findings of fact[.]" *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). A trial court's determinations are clearly erroneous if "we are definitely and firmly convinced that it made a mistake." *In re White*, 303 Mich App 701, 709-710; 846 NW2d 61 (2014). Meanwhile, this Court reviews unpreserved arguments, such as respondent's arguments that the trial court's procedure was improper, "under a plain-error analysis." *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. (quotations and citations omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008) (citation omitted).

"Child protective proceedings have long been divided into two distinct phases: the adjudicative phase and the dispositional phase." *In re AMAC*, 269 Mich App 533, 536; 711

-1-

NW2d 426 (2006) (citations omitted). "The adjudicative phase occurs first and involves a determination whether the trial court may exercise jurisdiction over the child, i.e., whether the child comes within the statutory requirements of MCL 712A.2(b)." *Id*. "The dispositional phase involves a determination of what action, if any, will be taken on behalf of the child." *Id*. at 537. "In order to find that a child comes within the court's jurisdiction, at least one statutory ground for jurisdiction contained in MCL 712A.2(b) must be proven, either at trial or by plea." *In re SLH*, 277 Mich App 662, 669; 747 NW2d 547 (2008). In pertinent part, MCL 712A.2(b)(1) allows a trial court to assume jurisdiction over a child under the following circumstances:

The court has the following authority and jurisdiction:

(b) Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:

(1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship.

When making a determination regarding jurisdiction in termination proceedings, the trial court "shall state on the record or in writing its findings of fact and conclusions of law." MCR 3.977(I)(1). "Brief, definite, and pertinent findings and conclusions on contested matters are sufficient." MCR 3.977(I)(1). Although the trial court is not required to make those findings on the record during the hearing, when it does not do so "it shall file its decision within 28 days after the taking of final proofs[.]" MCR 3.977(I)(1).

Respondent argues that the trial court erred by failing to announce on the record that it found, by a preponderance of the evidence, that it had jurisdiction over MD and what findings of fact that decision was based upon. The record, however, does not support respondent's arguments. Indeed, the record reveals that after the close of proofs the trial court announced its findings of fact. Specifically, the trial court asserted that respondent openly admitted to deserting MD for a period of nearly five years. During that time, respondent did not provide any money, gifts, clothes, or food for MD. Respondent was informed by the Oakland Circuit Court in 2011 that in order for her to gain parenting time with MD, she would have to participate in a mental health evaluation. Respondent admitted at trial that she still had not performed the evaluation.

Respondent is correct that the trial court did not explicitly state, on the record, that it found there to be a preponderance of the evidence regarding a specific statutory ground for the exercise of jurisdiction. However, the trial court did make "[b]rief, definite, and pertinent findings and conclusions on contested matters[.]" MCR 3.977(I)(1). Further, in a written order signed by the trial court less than 28 days after the close of proofs, as required by the court rule, the trial court set forth which statutory grounds for jurisdiction it relied on. Indeed, the written order declared that, after trial, there was, on a preponderance of the evidence, "statutory grounds

-2-

to exercise jurisdiction over the child[,]" citing MCL 712A.2(b). The order further specified that the grounds were "failure to provide, when able to do so, support, education, medical, surgical, or other necessary care for health or morals" and "abandonment by parent[]." The language of the order is congruent with the language found in MCL 712A.2(b)(1) as statutory grounds for adjudication. Therefore, with respect to respondent's unpreserved argument that the trial court failed to follow the proper procedure for adjudication, we are satisfied the trial court followed the procedures established by MCR 3.977(I)(1).

We next address respondent's argument that the trial court clearly erred in finding that there was not a preponderance of the evidence in support of a statutory ground for adjudication. Recall that, "[i]n order to find that a child comes within the court's jurisdiction, at least one statutory ground for jurisdiction contained in MCL 712A.2(b) must be proven, either at trial or by plea." *In re SLH*, 277 Mich App at 669. Pursuant to MCL 712A.2(b)(1), two such grounds include where a "parent . . . , when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, . . . [or] who is abandoned by his or her parent[.]" As just discussed, the trial court found that those two statutory grounds were met by a preponderance of the evidence. The trial court did not clearly err where respondent openly admitted on the record that she had not seen or spoken to MD since 2010, and had not engaged in any legal action to attempt to see MD since 2011. She further admitted that she had not provided any monetary or other support to MD or to petitioner for the benefit of MD. Those admissions from respondent were corroborated by testimony from both petitioner and petitioner's mother. Given those facts, there was clearly a preponderance of the evidence that respondent neglected to or refused to provide any support for MD, and for more than six years of his life, she abandoned him. MCL 712A.2(b)(1).

Respondent argues that she could not have been found to have abandoned or neglected MD because she left him in the care of petitioner, MD's father. This Court, however, has previously disregarded that argument, because although a parent might not have the legal duty to care for a minor, they can still have abandoned or neglected the minor. Specifically, in *In re Hall*, 188 Mich App 217, 223-224; 469 NW2d 56 (1991), this Court addressed the respondent-mother's argument that she could not have abandoned her minor children when the children were left in the care of the children's grandmother. Although that argument was made with respect to grounds for termination pursuant to MCL 712A.19b(3)(a)(*ii*), which is for desertion, the same reasoning applies here. *Id*. This Court held that there were adequate grounds "regarding abandonment and neglect" where "[t]he evidence established that [the] respondent had little or no contact with her children from the time they were placed with their grandmother, and that [the] respondent failed to comply with parent agency agreements geared at providing the children with a stable home." *Id*. *Hall* is instructive here because the record established that for the six years MD lived with petitioner, respondent did not provide any care for or contact MD. As this Court in *Hall* held, that was sufficient evidence of abandonment and neglect. Therefore, the trial court properly took jurisdiction pursuant to MCL 712A.2(b)(1) despite the fact that MD was living with petitioner.

Respondent next argues that the trial court abused its discretion by allowing the lawyer-guardian ad litem (L-GAL) representing MD to be called as a fact witness. We disagree.

"It is settled that error requiring reversal may only be predicated on the trial court's actions and not upon alleged error to which the aggrieved party contributed by plan or negligence." *Lewis v LeGrow*, 258 Mich App 175, 210; 670 NW2d 675 (2003) (citations omitted). Stated differently, "[a] party may not claim as error on appeal an issue that the party deemed proper in the trial court because doing so would permit the party to harbor error as an appellate parachute." *Hoffenblum v Hoffenblum*, 308 Mich App 102, 117; 863 NW2d 352 (2014) (internal quotations and citation omitted). On appeal, respondent argues that the trial court erred by allowing the L-GAL to testify as a fact witness. The record reveals that it was respondent that called the L-GAL as the witness – not petitioner or the trial court. Therefore, pursuant to *Hoffenblum*, 308 Mich App at 117, respondent is not now allowed to use that error as an "appellate parachute." Instead, as this Court held in *Farm Credit Servs of Michigan's Heartland, PCA v Weldon*, 232 Mich App 662, 683-684; 591 NW2d 438 (1998), respondent's contribution to the alleged error means that respondent "ha[s] waived our review of this issue."

Respondent also argues that the trial court erred by permitting the L-GAL to be absent during certain portions of the trial. We disagree.

As an initial matter, we note that respondent does not have standing to challenge the L-GAL's behavior in her representation of MD. The child's right to assistance of counsel by an L-GAL during child protective proceedings is a constitutional protection. *In re HRC*, 286 Mich App 444, 458; 781 NW2d 105 (2009). "[C]hildren have a right to appointed counsel in child protective proceedings, MCL 712A.17c(7), and . . . a child's attorney appointed under the juvenile code has the same duties that any other client's attorney would fulfill when necessary." *Id.* (Citation and quotations omitted.) "Those duties, such as the duty to investigate, examine witnesses, and appear at hearings on behalf of the client, are inherent in each attorney's ethical obligations." *In re AMB*, 248 Mich App 144, 224; 640 NW2d 262 (2001). However, "this Court has held that a respondent in a child protective proceeding lacks standing to challenge the effectiveness of the child's attorney." *In re HRC*, 286 Mich App at 458.

Because the right to representation by an L-GAL is a constitutional issue, "it is personal to the child and respondent may not assert it on behalf of the child." *Id.*, quoting *In re EP*, 234 Mich App 582, 598; 595 NW2d 167 (1999), overruled on other grounds by 462 Mich 341 (2000). By statute, "[a] lawyer-guardian ad litem's duty is to the child, and not the court." MCL 712A.17d(1). As such, the L-GAL's role in the case was to advocate for the interests of MD, not respondent. Therefore, the L-GAL's performance during the proceedings, including her absences from certain portions thereof, affected the rights of MD and MD alone. Therefore, we decline respondent's invitation to address this issue any further. *In re HRC*, 286 Mich App at 459.

Respondent also challenges the trial court's determination that there were statutory grounds for termination. "This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App at 709. A trial court's findings of fact are clearly erroneous if "we are definitely and firmly convinced that it made a mistake." *Id.* at 709-710.

Respondent argues that the trial court clearly erred in finding that termination was established by clear and convincing evidence pursuant to MCL 712A.19b(3)(a)(*ii*), (g), (j), and (n)(*ii*). We disagree.

" 'To terminate parental rights, a trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence.' " *In re Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 635; 853 NW2d 459 (2014), quoting *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). The trial court first found that termination was proper pursuant to MCL 712A.19b(3)(a)(*ii*). The trial court's finding was not clearly erroneous if there existed "clear and convincing evidence that [respondent] had deserted the [child] for 91 days and had not sought custody during that period." *In re Laster*, 303 Mich App 485, 492; 845 NW2d 540 (2013).

The record reveals that respondent openly admitted to not having seen or spoken to MD since March of 2010. Further, respondent also admitted to not providing any financial or material assistance to MD or to petitioner for the benefit of MD in that same time frame. Respondent testified that she had not sought parenting time or custody of MD since 2011, and when her request was denied pending a mental health evaluation, respondent refused to complete that. Respondent's testimony was corroborated by petitioner, who stated that respondent had not been involved in MD's life since 2010, and that she had not attempted to be since 2011. Petitioner's mother testified that, even when respondent was living with MD in the home of petitioner's mother, respondent was still rarely around and did not purchase or contribute anything to the care of MD. Although there was testimony that respondent was in and out of jail and prison throughout those years, petitioner testified that, when counted consecutively, they amounted to little more than two total years over a span of six years. During the times when respondent was not in jail or prison, she still did not attempt to seek custody of or contact with MD. The trial court found that the aforementioned evidence established by clear and convincing evidence that respondent had deserted MD and not sought custody in more than 91 days. That decision was not clearly erroneous where respondent herself admits that she had not contacted or offered any type of support for MD since 2010, and had not sought parenting time since 2011. There was clear and convincing evidence that "[respondent] [had] deserted the child for 91 days and had not sought custody during that period[,]" and therefore, termination pursuant to subsection (3)(a)(*ii*) was proper. MCL 712A.19b(3)(a)(*ii*); *In re Laster*, 303 Mich App at 492. In order to circumvent those facts, as she did with respect to her adjudication argument, respondent argues that she could not have deserted MD when he was left in the care of petitioner. As we have concluded above, this argument lacks merit. *In re Hall*, 188 Mich App at 223-224.

The trial court also found clear and convincing evidence that respondent's rights should be terminated pursuant to MCL 712A.19b(3)(g). Respondent's parental rights were properly terminated if the trial court found, by clear and convincing evidence, that "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." MCL 712A.19b(3)(g). The record, as discussed above, supports the trial court's determination that respondent entirely failed to provide proper care or custody for MD. Indeed, not only did respondent fail to provide *proper* care and custody to MD, she did not provide *any* care or custody. Respondent did not contact or provide any support for MD in more than six years. Further, at the time of trial, respondent testified that she was living

in a Red Roof Inn and trying to save money for a lease. Respondent had ample time to create a situation where she could provide proper care and custody for MD, but even at the time of trial, there was no evidence that respondent would be able to do so in a reasonable time. As such, the trial court did not clearly err in determining that there was clear and convincing evidence supporting termination pursuant to MCL 712A.19b(3)(g).

The trial court also found that MCL 712A.19b(3)(j) was a statutory ground for termination of respondent's parental rights. That decision by the trial court was not clearly erroneous if there was clear and convincing evidence that "[t]here [was] a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if [he was] returned to the home of the parent." MCL 712A.19b(3)(j). The trial court's decision was adequately supported by the record. There was abundant testimony that respondent was a violent person. Further, there was also testimony that respondent felt comfortable being violent in front of her children, including both MD and LG, a child she shared with another man. Indeed, petitioner stated that respondent swung a frying pan at him while he was carrying MD as a baby. Although MD was not injured in the altercation, respondent showed little regard for MD's safety. Respondent had also been violent with LG's father in the presence of LG. LG's father testified that there was more than one occasion where respondent struck him while LG was watching. During certain arguments, LG's father would attempt to diffuse the situation by going to bed. However, those attempts did not always work, and LG's father would sometimes be forced to barricade himself and LG in the bedroom to avoid respondent's rage. LG's father testified that respondent had struck him in LG's presence as recently May or June of 2016. Further, LG showed signs of anxiety, including pulling out his own hair, which LG's father attributed to LG witnessing respondent's violent behavior.

Considering that evidence, the trial court did not clearly err in determining that there was clear and convincing evidence that MD would "be harmed if [he was] returned to the home of the parent." MCL 712A.19b(3)(j). Not only had respondent been violent in MD's presence, she also submitted him to possible danger by swinging a frying pan at petitioner while he was holding MD. Further, respondent indicated her inability to control her behavior by acting in a similar way toward LG's father while LG was present. "Evidence of how a parent treats one child is evidence of how he or she may treat the other children." *In re Hudson*, 294 Mich App 261, 266; 817 NW2d 115 (2011) (citation omitted). LG's father's testimony that he had to barricade himself and LG in a room to avoid respondent's violence revealed that not only was he concerned for his safety in respondent's presence, but also the safety of LG. The trial court properly considered that as how respondent would treat MD if she were to maintain her parental rights. See *id*. In sum, because there was clear and convincing evidence that MD would be harmed if he were to return to the care of respondent, termination was proper pursuant to MCL 712A.19b(3)(j).

The trial court also found that MCL 712A.19b(3)(n)(*ii*) was a statutory ground for termination of respondent's parental rights. The trial court did not clearly err in so doing if there existed clear and convincing evidence that respondent was "convicted of . . . [a] violation of a criminal statute that includes as an element the use of force or the threat of force and that subjects [respondent] to sentencing" as an habitual offender, and where "continuing the parent-child relationship with [respondent] would be harmful to the child." MCL 712A.19b(3)(n)(*ii*). It is undisputed that respondent was convicted on three separate occasions for domestic violence

and that domestic violence involves the use of force or the threat of force. MCL 750.81(2). For the second conviction, respondent was sentenced as a second habitual offender pursuant to MCL 769.10. For her third conviction, respondent was sentenced as a third habitual offender pursuant to MCL 769.11. Respondent admitted to those convictions and sentences. Further, as noted above, respondent's violent behavior that led to the various convictions also resulted in there being clear and convincing evidence that a continuing relationship with respondent would be harmful to MD. As such, there was clear and convincing evidence that respondent was convicted of a listed offense, sentenced as an habitual offender, and her continuing a relationship with MD would cause him harm. MCL 712A.19b(3)(n)(*ii*). Therefore, the trial court did not clearly err in finding that subsection (n)(*ii*) was a proper statutory ground for termination.

On appeal, respondent argues that the trial relied solely on her incarceration to establish statutory grounds for termination contrary to our Supreme Court's decision in *In re Mason*, 486 Mich 142; 782 NW2d 747 (2010). In that case, the Court held that "[t]he mere present inability to personally care for one's children as a result of incarceration does not constitute grounds for termination." *Id*. at 160. Respondent's argument, however, overlooks the fact that the trial court relied largely on her behavior while outside of jail and prison. Indeed, when the petition was brought and by the time termination was granted, respondent had been out of prison for more than 18 months. The trial court's decision, instead, was based on respondent's abandonment of MD even when she was not incarcerated, respondent's violent behavior in the presence of her children, and respondent's failure to offer any form of care or custody for MD throughout his life. Those actions and inactions by respondent took place while she was not in prison or jail. Therefore, respondent's argument under *Mason* is unavailing. *Id*.

Finally, respondent challenges the trial court's best interest determination. This Court reviews a trial court's determination regarding best interests for clear error. *In re White*, 303 Mich App at 713. "A trial court's decision is clearly erroneous '[i]f although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.' " *In re Olive/Metts Minors*, 297 Mich App 35, 41; 823 NW2d 144 (2012), quoting *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

Respondent argues that the trial court clearly erred in determining that the preponderance of the evidence supported its determination that it was in MD's best interest to terminate her parental rights. We disagree.

"Once a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interest[ ]." *In re LaFrance Minors*, 306 Mich App 713, 732-733; 858 NW2d 143 (2014), citing MCL 712A.19b(5). " '[T]he focus at the best-interest stage has always been on the child, not the parent.' " *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63; 874 NW2d 205 (2015), quoting *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). "Best interests are determined on the basis of the preponderance of the evidence." *In re LaFrance Minors*, 306 Mich App at 733 (citation omitted). In considering the issue of whether termination is in the best interest of the minor children, the trial court is permitted to consider "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, . . . the advantages of a foster home over the parent's home[,] . . . the length of time the child was in care, the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all, and

-7-

compliance with the case service plan." *In re Payne/Pumphrey/Fortson*, 311 Mich App at 63-64 (internal citations and quotation marks omitted). "In assessing whether termination of parental rights is in a child's best interests, the trial court should weigh all evidence available to it." *Id*. at 63. In addition, placement with a relative weighs against termination under MCL 712A.19a(6)(a). Indeed, "the fact that the children are in the care of a relative at the time of the termination hearing is an explicit factor to consider in determining whether termination was in the children's best interest." *In re Olive/Metts Minors*, 297 Mich App at 43 (internal quotations and citation omitted).

Testimony at trial revealed that MD had extraordinary care needs, including physical and occupational therapy arising out of his birth defect – benign hydrocephalus – and a possible diagnosis of autism. Further, MD was a stranger to respondent. He was only a few months old the last time he saw respondent. Since then, he had not spoken to or visited with respondent. Nor had respondent exercised any effort to remain in MD's life. Rather, respondent entirely abandoned MD for approximately six years. Plus, as discussed above, respondent's violent nature reflects that MD would be put in danger if he was ever submitted to the care of respondent. Respondent, over the course of six years, never demonstrated the ability to properly care for a child. We are also satisfied the trial court weighed the fact that MD was living with a relative in determining whether it was in MD's best interests to terminate respondent's parental rights.

Respondent's behavior toward LG presents additional issues with respect to MD's best interest. If respondent maintained her rights and someday managed to gain parenting time with MD, he would be at risk of harm because of respondent's violent and irrational nature. The evidence at trial revealed that on two separate occasions respondent took LG to Louisiana without notice to LG's father. Further, she refused to bring him back unless LG's father offered her money or a place to live. Respondent also would keep LG for longer than her scheduled time during overnight visits that did not involve Louisiana. She would refuse to bring LG back to his father unless his father would give her money. Respondent's track record shows that, even when only having parenting time with LG, her children are in danger of being removed from the state without consent from the other parent and being used for negotiating purposes with the fathers of her children. Further, there was no meaningful evidence that respondent was in a position to make positive changes in her life, considering that respondent had struck LG's father in LG's presence as recently as May or June of 2016. As such, the trial court properly determined it was in MD's best interest to avoid the possibility of issues arising out of respondent's attempts at involvement in his life, and to terminate her parental rights, particularly where MD had a safe, loving, stable home with petitioner. In sum, the trial court did not clearly err in determining that the preponderance of the evidence supported its decision that termination of respondent's parental rights was in MD's best interest. MCL 712A.19b(5).

Affirmed.

/s/ Michael F. Gadola
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood