# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* RICHARD LIBA REVOCABLE LIVING TRUST.

---

DAVID F. ZAK, TRUSTEE,

      Petitioner-Appellee,

v

CLAUDIA LOCKMAN,

      Respondent-Appellant,

and

DOROTHY LIBA, PAUL LOCKMAN, ROBERTA BOYTER, VICTORIA BACA, CATHERINE SIEGEL, JULIANA LOCKMAN, CAROLE BURKE, KARL BURKE, STEVEN WINTERS, MARGOT LIBA, and PAUL MOORE,

      Respondents-Appellees.

UNPUBLISHED
July 17, 2018

No. 338049
Macomb Probate Court
LC No. 2016-221655-TV

---

Before: O'BRIEN, P.J., and METER and RIORDAN, JJ.

PER CURIAM.

In this action regarding a proposed amendment to the Richard Liba Revocable Living Trust ("the trust"), respondent Claudia Lockman appeals as of right the trial court's order declaring the amendment invalid. We affirm.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

Dr. Richard Liba executed the trust, making him settlor and trustee, in 2007. Then, in July 2013, Dr. Liba had a stroke. In November of 2013 and February of 2016, Dr. Liba authored two amendments to the trust. At issue in the instant case is the second, handwritten amendment,

-1-

which changed the portion of the trust regarding distribution of Dr. Liba's estate after his death. Dr. Liba died in August of 2016, and shortly thereafter, Dennis Zak, the successor trustee for the trust and Dr. Liba's special conservator filed a petition with the trial court seeking instructions regarding which amendments to honor. Claudia, Dr. Liba's niece and court-appointed guardian, benefitted greatly from the 2016 handwritten amendment and argued that the change was valid. Dorothy Liba, Dr. Liba's sister; Roberta Boyter, Dr. Liba's niece; Catherine Siegel, Dr. Liba's niece; Victoria Baca, Dr. Liba's niece; and Margot Liba, Dr. Liba's sister-in-law, argued that the 2016 amendment was invalid for three different reasons: (1) the terms of the trust made it incapable of being amended at the time, (2) Dr. Liba lacked testamentary capacity when he made the change, and (3) the change was made under the undue influence of Claudia. After five days of trial, the court agreed that the handwritten amendment was invalid for the reasons argued by Dorothy, Boyter, Siegel, Baca, and Margot. This appeal followed.

## II. ADJOURNMENT AFTER ATTORNEY WITHDRAWAL

Claudia argues that the trial court erred in failing to provide her with additional time to obtain replacement legal counsel after allowing her attorney to withdraw from the case a few days before the second day of trial. Because this issue is waived, we disagree.

"Generally, an issue must be raised, addressed, and decided in the trial court to be preserved for review." *Dell v Citizens Ins Co of America*, 312 Mich App 734, 751 n 40; 880 NW2d 280 (2015). "[A] waiver is a voluntary and intentional abandonment of a known right." *Quality Prod Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 374; 666 NW2d 251 (2003). This Court will not "permit [plaintiff] to harbor error as an appellate parachute." *Hoffenblum v Hoffenblum*, 308 Mich App 102, 117; 863 NW2d 352 (2014). Claudia's attorney moved to withdraw from the case around three weeks after the first day of trial ended and one month before the second day of trial was set to begin. Claudia duly objected to that motion and argued that her attorney should be required to complete the case. If Claudia's argument on appeal was that the trial court abused its discretion in allowing her attorney to withdraw, then that argument would be preserved and not waived. However, Claudia argues on appeal that the trial court erred in not providing her additional time to obtain replacement counsel. At the hearing where the trial court granted her attorney's motion to withdraw, Claudia did not request an adjournment of the imminent trial date. Further, when the second day of trial began, Claudia made the following statement after noting that she was not certain regarding her ability to act as her own lawyer: "But since everybody's already here, and I think that probably I could go through at least this day perhaps without a lawyer, but I possibly need to get one." Later, Claudia again stated that she did not "want to hold things up," noting that "I thought perhaps I would be my own lawyer today, and then get one . . . ." At no point during her statement did Claudia request that the trial court adjourn the trial to allow her to obtain counsel. Indeed, on two occasions, Claudia specifically stated that she would act as her own lawyer for the second day of the trial. Although she noted that she would like to retain an attorney for future trial dates, she never raised the issue again. In sum, Claudia failed to preserve the issue by raising it with the trial court and specifically waived any error by repeatedly telling the trial court that she was willing to proceed with the trial on her own. See *Dell*, 312 Mich App at 751 n 40; see also *Quality Prod Concepts Co*, 469 Mich at 374. Allowing Claudia to now raise this as an error on appeal and achieve a new trial would be tantamount to permitting her to harbor error as an appellate parachute. *Hoffenblum*, 308 Mich App at 117. If Claudia wanted additional time to seek an attorney the

-2-

time to ask for it was at trial, not now on appeal. *Id*. Consequently, this issue is waived and we refuse to consider it. *Id*.; *Quality Prod Concepts Co*, 469 Mich at 374.[1]

## III.  THE TRUST'S ABILITY TO BE AMENDED

Claudia argues that the trial court erred in determining that the trust, by its own language, was no longer subject to amendment on February 4, 2016.  We disagree.

## A.  STANDARD OF REVIEW & GENERAL LAW

"The interpretation of a trust agreement is [] a question of law reviewed de novo on appeal." *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 693; 880 NW2d 269 (2015). "An appeal of a decision of the probate court, however, is on the record; it is not reviewed de novo." *In re Lundy Estate*, 291 Mich App 347, 352; 804 NW2d 773 (2011).  Instead, "[t]his Court reviews the probate court's factual findings for clear error and its dispositional rulings for an abuse of discretion." *Id*. "The trial court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes." *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008).  "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *In re Estate of Bennet*, 255 Mich App 545, 549; 662 NW2d 772 (2003).

"With respect to the amendment of a trust, the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*., governs the application of a trust in Michigan." *In re Stillwell Trust*, 299 Mich App 289, 294; 829 NW2d 353 (2012).  "[A] settlor may amend a written revocable trust agreement '[b]y substantially complying with a method provided in the terms of the trust.' " *Id*., quoting MCL 700.7602(3)(a).  The trial court determined that the terms of the trust required the 2016 amendment to fail because the language used mandated that due to Dr. Liba's incapacity, the trust could no longer be amended.  When considering a dispute regarding the meaning of a trust, "[t]he intent of the settlor is to be carried out as nearly as possible." *In re Kostin Estate*, 278 Mich App 47, 53; 748 NW2d 583 (2008).

This Court in *Brown Trust*, 312 Mich App at 693-694, summarized the proper procedure for interpreting a trust:

> "A court must ascertain and give effect to the settlor's intent when resolving a dispute concerning the meaning of a trust." [*In re Herbert Trust*, 303 Mich App 456, 458; 844 NW2d 163 (2013).]  The settlor's intent is ascertained by looking to

---

[1] We have also reviewed the record, and note that, even if Claudia had properly raised the issue before the trial court, it would not have been an abuse of discretion to deny an adjournment where Claudia failed to exercise due diligence in seeking a new attorney considering her attorney's motion to withdraw was filed one month before the second day of trial, and there would have been no injustice considering that Claudia's position lacked legal merit, with or without an attorney to assist her. *Tisbury v Armstrong*, 194 Mich App 19, 20; 486 NW2d 51 (1991).  Therefore, this argument is not only waived, but lacks merit. *Id*.; MCR 2.503(B)(1).

the words of the trust itself. *In re Perry Trust*, 299 Mich App 525, 530; 831 NW2d 251 (2013). If the trust's terms are ambiguous, a court must look outside the document to determine the settlor's intent, and it may consider the circumstances surrounding the creation of the trust and the general rules of construction. []*Kostin Estate*, 278 Mich App [at] 53[.] The fact that litigants disagree regarding the meaning of a trust, however, does not mean that it is ambiguous. See *Detroit Wabeek Bank & Trust Co v City of Adrian*, 349 Mich 136, 143; 84 NW2d 441 (1957) (noting litigants espousing different positions regarding the proper interpretation of a will did not render its terms ambiguous); *In re Reisman Estate*, 266 Mich App 522, 527; 702 NW2d 658 (2005) ("The rules of construction applicable to wills also apply to the interpretation of trust documents."). A court must also read a trust as a whole, harmonizing its terms with the intent expressed, if possible. *In re Raymond Estate*, 483 Mich 48, 52; 764 NW2d 1 (2009). In sum, a court must enforce the plain and unambiguous terms of a trust as they are written. *Id*.; *Reisman Estate*, 266 Mich App at 527.

## B. ANALYSIS

Section 1.6 of the trust provides that, "[p]hysical or mental incapacity is as determined by a Court having jurisdiction over such matters," and that "[d]uring the period that [Dr. Liba] shall remain incapacitated, this Trust Agreement shall be irrevocable and not amendable." It is undisputed that the trial court entered an order in January of 2015 finding that Dr. Liba was an incapacitated person. Thus, pursuant to the plain language of the trust, it was not capable of being amended while Dr. Liba remained incapacitated. See *Brown Trust*, 312 Mich App at 693.

The trust also provided for circumstances where Dr. Liba would be considered to have regained capacity. Specifically, in § 1.6, the trust stated that Dr. Liba would remain incapacitated with respect to the trust until the "aforesaid Court order terminates and/or upon receipt of a unanimous determination in writing by two (2) medically-licensed doctors, one of whom shall be [Dr. Liba's] personal physician, if possible is made indicated that [Dr. Liba] has [sic] become able to carry out [his] responsibilities as the Trustee of this Trust." It is undisputed that the aforementioned court order never terminated. Consequently, the trust would only become capable of amendment if there was a determination in writing by two doctors that Dr. Liba had regained capacity. The trial court accepted one such opinion from Peter A. Lichtenberg, who had a Ph. D. in clinical psychology from Purdue University. Disregarding the trial court's determination that Lichtenberg was "medically-licensed," there still only was one opinion regarding Dr. Liba's regaining of capacity. Claudia proposed that a letter written by Dr. Urday, who she asserted was Dr. Liba's primary care physician, satisfied the language of the trust. The record, however, is plain that the letter by Dr. Urday was never admitted into evidence, the trial court determining that it was inadmissible hearsay. Further, Dr. Urday was not called to testify. Therefore, the two requirements for Dr. Liba to be considered to have regained capacity in the trust were not fulfilled. By the plain language of the trust, in such a situation, the trust was not capable of being amended. See *id*. Thus, the handwritten amendment, which was written and signed by Dr. Liba on February 4, 2016, was invalid by the terms of the trust. *Id*.

Claudia does not contend that the trial court erred in determining that Dr. Urday's letter was inadmissible hearsay. Instead, Claudia argues that the trial court somehow erred in considering the letter on the second day of the hearing, but then refusing to do so when making its final findings on the last day of trial. Claudia's argument relies on a misunderstanding of procedural and evidentiary rules. Claudia is correct that on the second day the court referenced Dr. Urday's letter, reasoning that the trust may have been capable of being amended. However, in considering that letter, the trial court was deciding the motion for summary disposition brought on the first day of the trial. When deciding a motion for summary disposition, a trial court must consider "substantively admissible evidence." *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 373; 775 NW2d 618 (2009). The trial court, therefore, properly considered the letter at the summary disposition phase because it was admissible in content, although not necessarily in form. *Id.*, citing *Maiden v Rozwood*, 461 Mich 109, 123-124 & n 6; 597 NW2d 817 (1999). When the trial court made its findings of fact at the end of the trial, however, it was required only to rely on evidence admitted at trial. At that point, Dr. Urday had not been called to testify and his letter had been deemed inadmissible as hearsay. Consequently, there was no admissible evidence of Dr. Urday's opinion for the trial court to consider, and the trial court did not err in determining that the trust, by its own language, was not subject to amendment. *Garcia*, 312 Mich App at 693.

Claudia also asserts that if she had legal representation throughout the trial she would have called Dr. Urday to testify, thereby satisfying the terms of the trust. This Court's review is limited to the record established at trial. *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002). The trial court record contains no evidence that any attorney would have called Dr. Urday to testify, and even if they had, there was no evidence regarding the content of Dr. Urday's testimony. Because our review is limited to the record established before the trial court, and not on abject speculation, Claudia has not provided any ground for reversal. *Id*.

IV.  CONCLUSION

Having determined that the trial court properly held that the trust was not capable of being amended on February 4, 2016, the amendment must fail, and Claudia's other arguments on appeal have been rendered moot.[2]

---

[2] Briefly, however, having reviewed the entire record, we are satisfied that the trial court did not clearly err or abuse its discretion in determining that the handwritten amendment was invalid because Dr. Liba lacked capacity to amend his trust on February 4, 2016, and was under the undue influence of Claudia when he attempted to do so. MCL 700.7601; MCL 700.2501; *Persinger v Holst*, 248 Mich App 499, 504; 639 NW2d 594 (2001). Claudia's arguments to the contrary would require us to reevaluate the credibility of witnesses and the weight to be given the evidence admitted at trial, which we will not do. *In re Duke Estate*, 312 Mich App 574, 581; 887 NW2d 1 (2015).

Affirmed.

/s/ Colleen A. O'Brien
/s/ Patrick M. Meter
/s/ Michael J. Riordan